We'll hear the next case on the calendar, United States v. Kirkland Smith. Good morning, may it please the Court. I'm here with James Egan from the Federal Defenders in the Northern District of New York. I, along with Co-Counsel Molly Corbett on the opening brief, represent Kirkland Smith. Broadly speaking, Mr. Smith raises two challenges to the judgment. One concerns the suppression, denial of the suppression motion, and the second concerns the 212-month sentence. I'd like to focus this morning on the suppression-related issues and start with the probable cause issue. As I see it, this is a case where when officers apply for a warrant based on their claimed viewing of an image that does not depict contact and therefore can only be illicit if it is considered lewd under New York law or lascivious under federal law, which I understand would be essentially the same. Do the officers have to submit the image with the application for the warrant? And if not, what level of detail must they include about the image? It's our position, obviously, that they should have submitted the image itself because when we're dealing with lewd or lascivious images, it's often a subjective judgment about whether the image depicts, meets the legal standard. Is there a clearly established law on that issue? I realize we're not dealing with a qualified immunity issue, but we are dealing with an exclusionary rule that looks to essentially ultimately good faith, intentionality of misconduct under the Herring case from the Supreme Court. If you're here to tell us that officers should have submitted an image there and that there's a special requirement for . . . Which category of cases? Do you apply it just to pornography cases or sex cases or children cases or what crimes you apply them to? Don't we essentially have the problem that this officer, if he defaulted on that application, was at worst acting negligently such that suppression would not be the remedy? Okay, so jumping to good faith, but included in that, as you point out, the obligation. So the other circuits, the first, mainly the first, this issue seemed to have come up in the late 90s and early 2000s, and the first circuit was Trailblazer in this area, and required essentially when it's a lewd or lascivious, we're talking about that category of images, that an image does have to be submitted or a fairly robust description of the image that would allow the magistrate to make his or her own independent evaluation, not just rely on the claims of the officers. The Third Circuit followed that, and the Ninth Circuit eventually did as well. This circuit, in preparing for this argument, realized back in 1998 there was a case called Jizorka, and it basically skipped that step and said even if there is an obligation, we're going to apply good faith because the law is not settled in this area. I would submit that when other circuits, in preparing for oral argument last night, I realized I probably should have looked at New York jurisdictions, whether they have a similar obligation. I was not able to find a case either way on that. I'd be happy to submit something on that if the Court pleases. But I think when the circuits that have addressed this issue, starting in 2005 and continuing up into 2017 in the Ninth Circuit, including the Fourth Circuit in 2013 or 2011 in the case called Doyle, they sort of fill in this obligation. And I think that that's... Aren't you essentially saying that there's no established law in this circuit? Well, I'm saying in the Second Circuit. I don't know about New York courts. If the Court indulges me, I would like to at least have a chance to look at that more fully because this is after all a state investigation. You're saying there's no Supreme Court case, there's no Second Circuit case, and there may be other circuits that speak to this.  The Supreme Court case is PJ video back in the Rehnquist decision. In the footnote they say, footnote five I think, that basically we're not going to require an image in every case, but the description has to allow the magistrate to make an independent assessment. Circuits have come in after that. That wasn't dealing specifically with lewd versus contact type images. If circuits have come in and said where it's a lewd image, then the image needs to be submitted if you have it. Can I move you to another area if I could? That is the question of what constitutes an unreasonable delay for a search warrant. How do we think about that? In other words, in part it may be dependent upon how much other work is being done, whether there's an emergency, how many days is reasonable or not reasonable. Could you speak to that issue? I think courts have rightly issued a bright line number of days analysis, but I think that it's a balancing test, the police's interest versus the defendant's interest. I think that as long as the police can come forward with explanations that occupy the time in question, so 31 days in this case, so that Investigator Kirby can come forward and say on each of those 31 days he was doing X, Y, and Z that occupied his time in a reasonable way and that prevented him from going forward with actually submitting or drafting. In this case, I don't know that he did a lot, but submitting the application then that would be reasonable, but he didn't do that. He gave General, my area is big. I have lots of cases, and the Woonsocka took a couple days to give me the police reports. When in that 31 days the police reports were given or requested is not in the record. Basically, the position is that the explanation does not fill the delay, and therefore there needs to be a day-by-day justification. Obviously, I'm not giving you a journal of what you did each day, but essentially an explanation that reasonably fills the time. This didn't do that. It's just his explanations are not specific to this case, except for the police reports, but those take two days, and they don't say when in that 31-day period the two days occurred. In fact, nothing resulted from that. They already knew. They already had the information, and they didn't get it right either, and they overstated his history.  . That was seen as indicative and allow people to  a more informed decision  Thank you. Any more questions? I'll reserve. Thank you. Please the court. My name is Paul silver. I appear on behalf of the government. With respect . I ask you please to address this issue about the delay. If there were no emergencies or other outlier circumstances, how do we think about how long the police can keep someone's cell phone and tablet, assuming they were legally seized in the first place? Obviously the length of the delay is going to be a significant factor. The cases that we've cited in the brief deal with delays that are significantly longer in many cases than the 31 days here, but obviously we want the police to act with due diligence. Is there anything in the record as to why the investigator Kirby was so busy with his caseload that he couldn't have applied for a warrant sooner than 31 days? I know he says he had 15 to 20 cases. Is that a lot? How do we assess that? Well, I mean the district court assessed that. It was in part the number of cases, in part the nature of the geography where this particular investigator worked and travel time and those factors. The district court made a finding that it was the presence of these other duties for this officer that resulted in the delay in large part. I don't think that's it. But he says, doesn't he, and correct me if I'm wrong, that there wasn't any emergency causing him to be away from work for several months, whereas he was proceeding under normal circumstances by keeping the case and applying for the warrant when he did. Doesn't that seem to suggest that there was no extraordinary justification for the delay? There may be no extraordinary justification in the sense of some emergency. I agree with you. The record does not establish any emergency. But the district court determined that the nature of the business was such that it was responsible for, at least in part, some of this delay. I think that's a factor that the court has to consider, obviously. What of the nature of the crime here? This is possibly evidence here that this officer trooper has of sexual predation on a child, right? And a person who's at large. It's hard to imagine what would have been more important in terms of the officer's other duties, far-flung geographically as they might be, than trying to get to the bottom of this. Well, I've seen cases that have been brought to this court from my district where there were circumstances of actual abuse going on, which resulted in problems with warrants and the like, which ultimately the court excused because of the fast pace of what was occurring. I don't think that's what was occurring here, Your Honor. There's nothing in the record to suggest that this was anything other than an image of past abuse. Not that there was reason to believe that this defendant or another... Well, he couldn't tell that. I mean, he sees on the iPhone or whatever the tablet that he gets, he sees an act of abuse that apparently this person's actually been looking at in the car. And then he's back home, Mr. Smith at large. Shouldn't we, in terms of looking at reasonableness, look at what's the severity of the crime at issue? Not simply in terms of whether the officer had other cases on his docket. Yes. And I don't mean to diminish the severity of the crime here, but I don't believe there was an exigency presented by the information known to the officer. Serious, but nothing that suggested ongoing abuse. Now, I can't quibble with you that an officer should have that thought about whether there might be ongoing abuse, but there's nothing here to suggest that that was the case. The officers, different officers than the one who saw the image, were at the defendant's residence I believe the following day to give him the traffic citations and ask for consent to look at these electronic devices. So, I don't know if, because cops think like cops, they were also looking around for, you know, the kinds of things that you're alluding to, but while this is a serious offense, it doesn't present exigency in my opinion, Your Honor. And it's not the only factor. What the business of the officer was, as the court has already addressed, there's a diminished possessory interest in the devices. At least one of them, the officer observed the image in question. That diminished possessory interest is also reinforced by the fact that the defendant made no claim or inquiry about when or if he would get the devices back. We did not, or the seizure did not interfere with any liberty interest of the defendant. So, looking at all the factors, while this officer may or possibly should have acted sooner, and we only know what we know from the record, and I understand the court's concern about delay, again, that period of delay is not as lengthy as many others, and the other factors seem to weigh strongly in favor of the government. So, looking at the picture as a whole, I would say that this set of circumstances does not warrant suppression of the evidence. I'd add that, and I relegated this to a footnote in my brief, below what the defendant requested was an adverse inference to be drawn against the government. I beg your pardon. I'm confusing two issues. Excuse me. With respect to whether or not there was probable cause for the search warrant, the original search warrant, and I think all the other search warrants that we have,  was in the first paragraph, or fall, based on the first. The officer obviously didn't address any specific factors like the DOS factors. The description of the image is bare, but even looking at the DOS factors, the first one that's listed is whether the focus of the image is the genitalia of the minor, and here the way the officer described the image suggests that that was the focus of the image. In any event... What about the failure to preserve the sleep settings? Well... Isn't that negligent? It might be negligent, but that's not to say it's negligent. Even if it was negligent, it's not sufficient to find spoliation. There has to be bad faith, which was never alleged, nor proven, and the potential exculpatory nature of the information evidence that wasn't preserved has to have been apparent at the time it was not preserved. Neither of those factors is present here. I acknowledge that it's problematic from the defense perspective in the circumstances that we have here. I'm trying to understand in terms of just the routine practices in the district. Is it really the case that really no effort is made to ensure that settings are preserved? I'm not aware of what practices might be followed by other agencies, but all I know about the state police practices are what was testified to here. And I will tell the court, and I'm certainly no expert in these kinds of cases, this is the first time I've seen a case where those settings were an issue. So it's not as if it's a recurring issue that the police were ignoring. But that does appear... I can't say whether that remains their practice, but it certainly was at the time not to preserve those issues, those settings. Is it the state of the record that the defendant said he had set sleep settings and that whoever was examining the iPad didn't look to see whether there were sleep settings or just... Well, it wasn't... The defendant didn't make a claim about what sleep settings had been set at or near the time of the seizure. It was in support of the motion for the adverse inference or to suppress the evidence that that claim was made. I'm not sure how clear the record is. I know from speaking to the trial attorney that there were efforts made to try and reconstruct what the settings were, which was not possible. So it's not clear that there were sleep settings set? That's correct. There's no way to, by virtue of the way that the state police conducted their examination, there's no way to ascertain what settings had been set. Unless the court has any questions, any further questions, I see I'm out of time. How long at a minimum was it before the officer saw the scene and when it had been viewed by... So far as our record tells us. And when it had been before the officer got there, I guess I should say. Because at the time he was dealing with Mr. Smith in the first place. You mean from the time of the officer's arrival on the scene? Correct. I can't tell you exactly. It appears to be a couple of minutes. The officer said he observed Mr. Smith hunched over the wheel. The officer went to the passenger side for a couple of minutes I believe is stated in the record. Couldn't wake him up. Went to the driver's side, woke him up. Mr. Smith unlocked the door and the officer went back. At that time he only put the car in park and turned the key off. He had taken Mr. Smith out of the car as well. I can only estimate that to be about five to ten minutes. I don't think it's expressly stated in the record. Thank you. Let me just ask you one question just to clarify in my own mind on the delay for the search warrant issue. Did your client's lawyer seek in the district court the return of the tablet and the phone? The tablet and the phone were seized on October 30th. Officers went to Kirkland Smith the next day to issue the tickets. Asked for his consent. He said no, get a warrant. They applied for a warrant on December 1st I believe. They search it. He doesn't have a lawyer at that point. He hasn't been charged federally or in state court with any crime that would get him a lawyer. He didn't retain one. He didn't seek specific ... The record is that Kirby was asked, did Kirkland Smith ask for the return of the tablet? Kirby said no, but there were other officers there and they didn't testify. Kirkland Smith never affirmed or was asked the question that would indicate that he demanded the return. Though there's no indication that he would understand that he could because they asked for his consent. He said get a warrant and we don't know what happened after that. Can I just address a few points that came up during the series? As to the preservation of the sleep setting and swipe setting, they claim that that's not something that they would need to preserve, but that doesn't ring true because in these types of cases it's not just whether pornography is on the computer, it's who put it there and who knew that it was there. Those are two questions that can really relate to was there a setting that required either password or swipe or sleeping, whether the tablet went to sleep. I think that that is actually there. They were on notice that those were in every case. I didn't understand that. I have a tablet and I never knew that there was a connection between the sleep setting and identifying who it is that put something on the tablet. We're talking about a person who was passed out drunk in a car. We don't know who was there with him before the officer arrived at the scene. We don't know how long he was on the side of the road. We don't know if somebody else was in the car who could have accessed the tablet either that day or previously, left it running or not and put the image in question on the tablet and that person didn't know about it. These are questions in every case, identity and knowledge. These are bedrock of these types of cases. I think you can infer bad faith from that. Judge Meyer, I know I'm over. Can I just finish two quick points? Thank you. Judge Meyer, you asked about maybe there's a predator on the loose type of questions. I think maybe not that strongly. Snickles did preserve the tablet in his words because it may pertain to a sexual encounter with a female. The way that it's written is that Kirkland Smith is a black man and the genitals are described as black. The way it's written is that he thinks that this is evidence that Kirkland Smith maybe had an encounter with a female so that predation and that this would create an exigency or at least reason to move quickly. He's a prepubescent female. Is that right? He doesn't say that. Snickles doesn't say that originally. He just says bald female and then he says female. He never says child. He never says prepubescent. The dose factors are not here. There's no description about focus on anything setting and I have more but unless there are more questions I'll yield. Thank you. Thank you both for your arguments. The court will reserve decision.